The next case for argument is 23-1763, In Re. Snyder, please proceed. May it please the Court, I'm Joseph Lucci representing Snyder. The Board's decision should be reversed because the Board erred, at least in that the stated grounds for rejection lack substantial evidence. The Board's legal error specifically derives from its treatment of the NCT-172 publication and its closely related failure to address evidence indicating that those of ordinary skill did not have a reasonable expectation that the claimed combination therapy would work. Snyder's claimed therapies satisfied a critical need in the treatment of prostate cancer, and they relate to the surprising finding that administering abiraterone with norepirate works better than either drug alone. Following the examiner's lead, the Board found it necessary to use five different publications to construct an obviousness rejection, and this included the NCT-172 disclosure of a different drug combination than what we have claimed here. The problem with the Board's reliance on the NCT-172 publication is that this Court has found that disclosures of this type do not provide a reasonable expectation of success that the agents they mention will actually have the indicated therapeutic effect. Which case is that? OSI, Your Honor. OSI. OSI. Because of an unpredictability in the art or something like that? That's one factor, Your Honor. The unpredictability coupled with the fact that it's merely a statement of intention to try something without any data being provided. Was there any record below in front of the agency as to the relative unpredictability of this particular art for this particular cancer therapeutic? In general terms, I don't believe there was anything of a review article type of nature. There was certainly the unpredictability of NCT-172 in that it didn't pan out the way that the... That's the Hussain publication, right? The Hussain publication reports the results for NCT-172, that's correct. Right, so that's a different question for me in terms of to what extent it was proper to exclude that as being a post-priority document. True, Your Honor. Just getting to the other question, it looked to me like before the agency you were more focused really on Hussain and then the unexpected results evidence that you relied on, and then this reasonable expectation of success argument that seems to be really the main event of your appeal was really much more of a very short reference of an argument made below to the board and examiner. It was made to the board and to the examiner, though, the reasonable expectation. In what I would call in the most limited sense, as I understand it, there wasn't... You could have filed an expert declaration on this matter, or you could have cited or discussed any publications, or you could have cited and discussed OSI and Novartis because it seems to me that today on appeal you're basically making an argument that as a matter of law, as a matter of Federal Circuit precedent, cancer therapeutics, whether for any particular kind, is just a very unpredictable art. I think it's a broader argument, Your Honor, and I think it's well established that pharmaceutical therapies generally are unpredictable. It's not just cancer therapeutics. It's not just prostate cancer therapeutics. Pharmaceuticals, the authorities I believe that were cited in the briefing support the proposition that therapeutics in general are recognized to be unpredictable. So there is that. I do think that there was greater emphasis on that issue in our briefing, but it was certainly an issue that was raised below. We raised in many different respects before the examiner and before the board just discussing what exactly NCT-172 is. It's a clinical trial protocol. Being very literal about it, they're saying, we're going to try this. We don't know whether it's going to work, and statistics for pharmaceutical clinical trials are not very good. Usually things don't work. So we were very explicit about, hey, this is a reference that is a clinical trial, and there was greater weight put in that than was warranted, and that was a legal error, Your Honor. As Your Honor mentioned, the problem with publications like this is they don't disclose any data or other information about the drug's efficacy in actually treating disease. There were other references, though, that talked about the efficacy for each of the two drugs. I don't even dare pronounce them, the N1 and the A1. I have a lot of practice. Yes, niraparib and vilaparib, you're talking about, Your Honor, or abiraterone. The abiraterone and the niraparib. There were references identifying efficacy for each of   Individually, that's correct, Your Honor. The critical nit here, though, is that things behave differently in combination than they do individually, and it's even a bigger issue. So as we mentioned in our briefing, the Patent Office has cherry-picked the reference, particularly the Jiang reference, and they've focused on the fact that there's a statement there saying niraparib monotherapy, this is something that warrants some further results. It has promise here. Strong clinical rationale. I think that's the quote. Very well could be, Your Honor. I think what needs to be done is you have to have a broader perspective and not just focus on the statements in Jiang that they cite, to the exclusion of statements in Jiang that don't support their position, which they don't cite. I think you have to have a broader perspective here and look at all the references that were cited by the examiners, not things we put in the record. It's the Patent Office putting these in the record. And what you have in the record is you have abiraterone being a known therapy. In fact, it was the standard of care for treatment of this type of prostate cancer. That's shown by the Logothetis reference. That was a 2012 publication. But before Jiang in 2014, you have niraparib being known to be treatment for castrate-resistant prostate cancer. That's shown by the Santu reference. Again, cited by the examiner. So you have these two drugs being out there. And for whatever reason, the first combination that was made, that's of record in NCT 172, that we're going to try vilaparib with abiraterone. Not niraparib, vilaparib. So for whatever reason, those skilled in the art viewed vilaparib as being the most promising candidate for combination with another drug, kirabiraterone. Maybe the people behind NC 172, that's what they chose to be focused on. But then we have, as you pointed out, the Zhang reference, who says, well, guess what? I've been looking at these competing compounds, these competing PARP inhibitors, and it's really showing me that the niraparib is better than the vilaparib. I understand what you're saying, Your Honor. I don't think that's actually what Jiang says. What Jiang happens to be is a review article. And Jiang talks about a number of different PARP inhibitors as monotherapies, administered alone, niraparib being one of them, elaparib being another. There's two trials for monotherapy of elaparib, a related drug as well. There's two drugs that are mentioned as combination therapies in Jiang. Interestingly, neither of them have niraparib or elaparib. They have vilaparib, the same drug that NCT 172 is to combine vilaparib with abiraterone. But what Jiang also references is a test of vilaparib with another drug, temozolomide. And they showed in there that the mass study for that wasn't so great. Now what is relevant here is if you look at this objectively, and without the benefit of hindsight, as the Patent Office has done, what the art suggests is that those skilled in the field had vilaparib in mind as the leading candidate among these drugs for combination. Because we have two studies demonstrated in Jiang. The only two instances we have in the record of people actually trying combinations were with vilaparib. So now the Patent Office is substituting its judgment with the benefit of hindsight, seeing our invention, and saying, oh, no, no. We see there that people were trying vilaparib, but we think it would have been honest. Is Jiang not saying that niraparib has better efficacy than vilaparib? No, it's not, Your Honor. It's saying it's a promising candidate. If you take a look at the comments about niraparib, they say here that it has good properties. I'm at appendix 416, Your Honor. In the paragraph, the beginning, the tumor suppressor. Which column? First column. First full paragraph. The tumor suppressor? That paragraph, the last sentence, it begins, although. They say, although one could argue that radical prostatectomy samples may not recapitulate the downstream events of PTEN loss in late stage prostate cancer. So there's that qualification. Then they say here, a recent phase one study, again, phase one, safety principally, study with PARP inhibitor niraparib, did not observe association between loss of PTEN and anti-tumor activities in sporadic metastatic prostate cancer patients. In the next paragraph, there's a statement there. They talk about the 23 CRPC patients. They talk about niraparib. And then they say here, they talk about the parameters of that study. And then they say, this is the first study to document clinical activity of a PARP inhibitor in sporadic CRPC. That's, again, monotherapy. And as we see here, it's in the record, things behave differently in monotherapy than combination therapy. We're different than people might expect. That's shown in the NCT172 clinical trial where they combined niraparib with abiraterone and found that the results were no better than abiraterone alone. So in that case, niraparib, which was, again, the objective evidence shows that was deemed to be the leading candidate for combination therapies, had anything to abiraterone. It was essentially inert. Contrast that with our inventors, which found that not only does niraparib and abiraterone provide a benefit, it provides a stark benefit. That's shown by the mouse test data. The survival was a very surprising invention that our inventors had in the face of what was contrary direction that those in the field were taking in the research they were doing in the field. That's the objective evidence. The panel is now looking at this, again, with the benefit of hindsight, piecing this together and saying, oh, no, we're not going to credit that. We're going to take a look at a cherry pick, the Zhang reference, and come up with a constructive rejection that produces the plain combination. As I said, the problem with NCT172 is just a public version of a plant study or clinical protocol. It's a trial. It's literally a trial. Sometimes when you try things, they work, and sometimes they don't. In this case, it didn't. It's frequently the case, as I mentioned, in pharmaceutical tests that clinical trials don't pan out. The odds are stacked against pharmaceutical companies, particularly in the field of oncology, cancer treatment. Prostate cancer is part and parcel of that. In spite of the clinical, explicitly speculative nature of NCT172 and the lack of any efficacy data, the board contended that those of ordinary skill would have drawn conclusions about the effectiveness of the drug combination that NCT172 happens to mention. The board did this even though there's no dispute that those of ordinary skill regarded such a conclusion as highly uncertain until such time as the results of the clinical trial became available. Indeed, combination therapies for the treatment of cancer were and are sufficiently speculative that clinical trials are needed. And here, to confirm the speculative nature of the clinical trials, we have the Zhang CT172. Zhang's remain, and this is a quote, they still, quote, remain to be seen, close quote, whether the combination of volaparib and abiraterone work better than abiraterone alone. And again- I'm curious, if you filed a continuation application or another RCE- Have we? Yeah. Yes, we have. Did you include anything like an expert declaration or- We haven't gotten to that spot in prosecution yet, Your Honor. You're into your rebuttal. Do you want to save it and- Briefly if I may, Your Honor, I just mentioned that with respect to another error that the board made was failing to give any weight to our evidence of unexpected results that we had in our patent application. It's pretty well established in the law that animal data, in terms of indicating the effectiveness of human pharmaceuticals, is entitled to some weight. In this instance, we had mouse data, but they're not just any mice. They're mice that harbored human tumors, so they were a very valid model for this. And the data, as we referenced and we show in the record, the survival data in the patent application was very stark, a very stark improvement. And that's another legal error that the board made that warrants reversal. So I'll reserve my time for rebuttal. Please proceed. May it please the court. The claims here recite a combination of two known therapies for treating prostate cancer to do nothing more than treat prostate cancer. The claims are thus prima facie obvious. The board did not err in relying on the 172 proposed clinical trial. In this case, it shows what people were motivated to do at the time and provides some evidence of a reasonable expectation of success. But its absence of clinical results are largely irrelevant in this case. Phase II clinical trials fail all the time, don't they? I have nothing in this record about the specific failure in prostate cancer for Phase II trials. But it's true, cancer research in general is unpredictable. Right. Well, if that is true, then why didn't the agency take that into consideration in issuing its 103 rejection or evaluating it at the board? I mean, I don't think that the agency didn't take it into consideration. The thing is, there's two references here with the individual drugs. Ligothetis teaching treatment with abiraterone and pregnazone to treat prostate cancer. And in Zhang, the Phase I clinical trial showing that norepirid had clinical activity against prostate cancer. And I note the Zhang reference says that norepirid was the first PARP inhibitor to show clinical activity, which suggests it's a motivation for its use over any other PARP inhibitor, though that's not a requirement. But I think the board focusing on norepirid was because of its clinical activity in these studies. And the fact that the 172 then doesn't have clinical data on a different combination doesn't teach a way or undermine the reliance on those references. And the council's discussion of looking at filipirid in the clinical trial as opposed to norepirid is just a timing issue. The 172 trial was proposed before the clinical results came out with norepirid. So whatever the motivations of the authors of the 172 trial, they didn't have the data in front of them about norepirid. And so it doesn't necessarily teach one way or the other about how one skill of art would be motivated as the filing date of this application. Is it your view that any, let's say there were 20 known drugs for treating prostate cancer. Is it your view that it's prima facie obvious to do any combination of any of those 20, either taking drug 1 and drug 19 or drug 4 and drug 7 or drugs 1 through 20, all of them combined? Any combination is prima facie obvious? In your hypo, you're assuming that they've all shown clinical activity in prostate cancer. That's right. And I don't know statistics very well, but let's just assume that's like over a thousand different possible combinations. They're all prima facie at 103? I think yes, a prima facie case, there could be rebuttal evidence that would suggest that particular combinations wouldn't work or that one wouldn't be motivated to do that. On this record, we have the motivation provided by the 172 reference to combine abiraterone specifically with a PARP inhibitor because of their different mechanisms of action. So one might expect that they would have a better efficacy. So in this case, there's further evidence of a particular motivation to combine these two drugs. Do you know anything about the mechanism of action between vilaparib and niraparib? They're both PARP inhibitors. I know that, but is there anything beyond that that we know? Not in this record, and I don't know anything further about them other than the clinical results and mouse results that are discussed in saying that vilaparib has not shown clinical activity, whereas niraparib has shown clinical activity. So that's the only distinction on this record between those two PARP inhibitors. And I would also note that there's no evidence on this record about some sort of problem with the combination therapy. It's not that the combination with vilaparib resulted in no treatment in prostate cancer. It just didn't advance the response to abiraterone and pregnisone. What if a declaration had been filed here by an expert in this field that says, this is wildly unpredictable stuff when you're mixing two things, even two known things to work, just given the science of it all, you really can't be sure whether it's going to work or not. And clear examples of that are just the Hussain results of NCT172. Not that I'm relying on Hussain to defeat NCT172 per se, but it's just an illustration of how unknown of a world we're working in here. That would have been some evidence against a reasonable expectation of success that obviously isn't on this record. It would depend on how specific, I think, the arguments were made. Sure, there's lots of unpredictability in cancer research, but what is the unpredictability about combining an FDA-approved drug for prostate cancer with a drug that has shown success in phase one? Specific evidence that that was unpredictable, I think, would be something the examiner and the board would consider then in weighing whether there was a reasonable expectation of success. But I'd also note that the expectation doesn't have to be complete certainty, it just has to be reasonable in this field. But, again, that kind of declaration and that evidence is not on this record. If a patent applicant files an application for a combination therapy where they haven't gotten approval yet for that combination therapy, but maybe they are looking to enter phase two clinical trials, would they have written description for that kind of claimed combination therapy at that stage? A description of a phase two trial and combination. Would they have possession of the invention before they even got any data yet from a phase two clinical trial? I do think they would, because they are testing if the method to treatment is... Do they know if it works? They don't know if it works, but it shows possession that that's their invention. And if it doesn't work, then that's post-filing information, and I don't know how that would affect their written description. But at the time of that, I would say that it would provide written description in an enablement support. So speculative utility is good enough for possession under 112? Well, the utility is that you would... To the point you've gotten to phase two trial, you've already got animal studies or in vitro studies or something that you've given to the FDA to support putting this drug into humans, and that would absolutely support a utility written description or enablement of the claims. Speaking of animal studies, what say you to your friend's argument with respect to not considering the mice? So the board...  Right. The board found that these claims, the unexpected results in mice fell completely without the... Outside of the scope of the claims to treating humans, and that Snyder hadn't presented evidence that this unexpected result in mouse would in fact correlate with what was claimed, a treatment of prostate cancer in humans. I would also note the board had an alternative ground that these unexpected results in mice were not in fact unexpected based on the results in Zang, and Snyder didn't contest that finding by the board in their opening brief. So that argument is forfeited and sufficient for this court to affirm the board's decision. Unless there's any other questions, we'd ask this court to affirm the board's decision. Thank you. Just a few points, if you may. Council had mentioned that the board did not err because NCT 172 provides some evidence that supports the rejection. That's an interesting change when you look at the way this is all developed. NCT 172 was the first listed reference that the examiner relied upon. If you take a look at the summary that the board provided in its decision, and that appears at appendix 18, NCT 172 again, the first listed reference. And you've seen the progression that when we finally got to the briefing before this court, there's been a further change in sort of stepping away from NCT 172, and we think that that change is very telling. It's pretty clear that what the board did was substituting its judgment for what was the objective evidence of record. On that point, I had mentioned earlier that there were two combinations with respect to Falaparib, that that was viewed as being the leading candidate for combination. They mentioned how the NCT 172, it just happened to be a timing issue, that it was the same year as the publications I mentioned for Naraparib and Abiratero. But we also had, as I mentioned, as summarized in Jang, there was a study with Temozolomide. That combination also was with Falaparib. That was a 2009 study. It's discussed in appendix 418. It's footnote number 48. It's a 2009 publication. So again, it's not just a timing issue that people thought that Falaparib was a leading candidate for combination. It's all the way back in 2009. So it's two combinations with Falaparib, none with anything else, until our inventors came along and found the very surprising results with respect to Naraparib. It's in the record, the very stark results that were obtained in our mouse data. That was stark. Naraparib alone provided no real improvement in survival. Abiratero provided 13, I guess this is, 13% improvement. The combination provided 31% improvement. So very surprising. That's too broad a brush to draw with these compounds. Saying that they're all PARP inhibitors doesn't do it justice. They're united by the fact that they inhibit the enzyme PARP. But it's not much different than saying, well, we're all lawyers. Well, lawyers do different things. You wouldn't want me to prepare your will, trust me when I say that. You wouldn't want a PARP inhibitor. They don't all do the same thing. They have different mechanisms. Some work better than others. And we see that in the record here. That in combination with Abiratero, there was a stark difference between the way Falaparib behaved and the way Naraparib behaved. I thought you were beyond your time. Very good. Thank you. Thank you for entertaining my comments. We thank both sides. The case is submitted. That concludes our proceedings.